Lawrence E. Henke
Addam D. Pincock
Vicevich Law
3738 Harrison Avenue
Butte, MT 59701
Telephone: (406) 782-1111
Fax No.: (406) 782-4000
larry@vicevichlaw.com
addam@vicevichlaw.com
State Bar of MT No. 42337024/66156315

FILED
APR 0 2 2021
By Tom Powers, Clerk
Deputy Clerk

Attorneys for Plaintiff

# IN THE MONTANA SECOND JUDICIAL DISTRICT COURT
## STATE OF MONTANA, IN AND FOR THE COUNTY OF SILVER BOW

| | |
|---|---|
| KIMBERLEE CHURCHILL, | Cause No. DV-21-93 |
| Plaintiff, | ROBERT J WHELAN |
| vs. | JUDGE DEPT. II |
| | **COMPLAINT AND DEMAND** |
| | **FOR JURY TRIAL** |
| INTERMOUNTAIN RETAIL EMPLOYEES' PENSION; BOARD OF TRUSTEES FOR INTERMOUNTAIN RETAIL EMPLOYEES' PENSION TRUST; and ZENITH AMERICAN SOLUTIONS, INC. | SUMMONS ISSUED |
| Defendants. | |

COMES NOW the Plaintiff, Kimberlee Churchill, by and through her counsel, Lawrence E. Henke, and for her complaint against Defendants, asserts and alleges as follows:

## I.
## Parties

1. Plaintiff Kimberlee Churchill, is a resident of Silver Bow County, Butte, Montana and at all times relevant was a resident of Silver Bow County.

2. Defendant Intermountain Retail Employees' Pension Trust ("the Trust") is a multi-employer benefit plan administered at 111 West Cataldo, Suite 220, Spokane, WA 99201.

3. Defendant Board of Trustees of the Intermountain Retail Employees' Pension Trust ("Board of Trustees") are the entity tasked with making decisions regarding payment of benefits, on behalf of the Trust, and can be served at 111 West Cataldo Ave., Suite 220, Spokane, WA 99201.

4. Defendant Zenith American Solutions, Inc. ("Zenith") is a Maryland Corporation with a principal place of business in Tampa, Florida.

5. Zenith serves as the Plan Administrator for the Trust.

6. Zenith is registered as a foreign entity with the Montana Secretary of State and can be served through its registered agent, Corporate Creations Network Inc, at 1925 Grand Avenue #127, Billings, MT 59102

## II.
## Venue and Jurisdiction

7. Venue is proper in this Court pursuant to MCA Title 25, Chapter 2, §§ 25-2-122 (1)(b), 25-2-122(2)(a) and (b), and/or 25-2-121(1)(b)(ii).

8. This Court has jurisdiction over the parties to this lawsuit because Zenith conducts business in the State of Montana.

## III.
## Summary of the Lawsuit

9. Ms. Churchill worked for more than 30 years for Albertson's and contributed to the company's pension plan during the early year period when she was eligible to participate, and before she entered a managerial role.

10. Despite being fully vested in the plan, Ms. Churchill was denied retirement benefits by the Trust.

11. The Board of Trustees and Zenith then engaged in a game of hide-the-ball with Ms.

Churchill, ignoring her requests for documentation to support the denial of benefits, before the Board of Trustees then denied her appeal.

12. Finally, Zenith misrepresented Ms. Churchill's administrative remedies, causing her to potentially miss a key Court filing deadline.

## IV.
## Background Facts

13. Ms. Churchill worked for Albertson's for 32 years, from 1983 to 2015 when she retired.

14. During that time, she acquired a credit for 19 years of service with Albertson's in a pension-plan eligible position, therefore Albertson's considered her to be fully vested in its pension plan as of 2001.

15. In 2001, she was promoted within the company to a General Merchandise Manager, a managerial position that removed her from the pension-plan contribution position but she retained her years of service for vesting purposes.

16. The General Merchandise Manager position does not contribute to the pension plan since it is a managerial position.

17. Pursuant to the Intermountain Retail Store Employees Pension Plan Summary Plan Description, chapter III, Section A, of the 2015 Edition, eligibility for retirement benefits is determined by the plan terms established as of the last date of contribution to the Plan.

18. Because Ms. Churchill made her last contribution in 2001, her Plan benefits are determined under the Plan terms which were in affect at the time of the last contribution, or in other words the Plan terms in effect in 2001.

19. The Plan terms for the 2001 time period[1] established that she can qualify for an "Unreduced Early Pension" upon the completion of three requirements:

---

[1] Intermountain Retail Store Employees Pension Plan, Summary plan Description, 2007 Edition, chapter VII, pg. 17.

    a. You have at least 30 years of Vesting service;

        i. Ms. Churchill completed her vesting service in 2012 while performing non-contributing duties in a managerial position. Also, since 2001 Ms. Churchill was classified as an "Inactive Vested" due to the fact that she had completed her seven years or more plan years.

    b. Contributions have been made to the Plan for you for at least 375 Hours of Service in each of seven or more Plan years; and

        i. Ms. Churchill, as of her last payment into the plan, had 31,212 hours contributed to the plan. The contributions were from 1983 – 2001, which is 19 years of continual service during plan years. Every year of service, for those 19 years, Ms. Churchill completed more than 375 hours of service.

    c. You reach age 55 but not age 65.

        i. Ms. Churchill turned 55 on October 12, 2018. She filed for her pension benefits to start on September 1, 2019.

20. After applying for pension benefits, she was initially denied a full pension due to the fact that she retired early, according to the Plan and Board of Trustees.

21. Ms. Churchill appealed the denial of her retirement benefit and her appeal was denied by the Board of Trustees on July 8, 2020.

22. Ms. Churchill did not receive notice of this denial until July 22, 2020.

23. At that time, she called Zenith to figure out what her options were moving forward with regard to her request for retirement benefits.

24. Ms. Churchill was informed by Zenith that she had 180 days to file an additional appeal.

25. This verbal information matched written documentation provided to her by Zenith while she was working at Albertson's.

26. Ms. Churchill then retained Vicevich Law to help her with appealing the denial of her pension benefits.

27. Vicevich Law confirmed with Zenith that the appeal was to be submitted to Zenith for

review to finalize all administrative remedies and, at that time counsel for Churchill, Addam Pincock, asked if any additional information was available to confirm the timeline for appeal.

28. No additional information was provided by Zenith; no notice of any appeal deadlines being other than already provided was given.

29. The next level appeal was then timely submitted to Zenith on January 12, 2021.

30. Zenith made no effort to remedy the later alleged deficiency with the appeal once it was received. With knowledge of the deadline of January 18, 2021 to file a Complaint, Zenith and the other defendants, by and through Zenith's fraud, sat silent despite knowing that Churchill was relying on prior false statements Zenith made with regard to appeal deadlines.

31. On February 18, 2021, Vicevich Law reached out to Zenith to get a timeline as to when the appeal would be reviewed by the Board of Trustees.

32. On February 22, 2021, counsel for the Trust responded with an email stating that the appeal would be reviewed by the Board of Trustees on March 15, 2021 at the next Trustee meeting.

33. On February 23, 2021, counsel for the Trust sent another email stating that, according to the Plan documents, which despite being requested on January 5th and January 12th, but never provided to the Plaintiff until that day, the Trust took the position that Churchill had missed her window to file a complaint with the Court and was therefore time-barred from doing so.

34. So, while Ms. Churchill lodged her second appeal with the Trust, as directed by Zenith and confirmed by the Trust, within the 180-day required timeframe, the Trust, Zenith, and the

Board of Trustees all sat idly by and waited while the statute of limitations allegedly expired while in possession of the timely filed appeal they would later claim was deficient.

35. Only after contesting this position did counsel for the Trust respond, stating that Ms. Churchill was required to file a complaint with the Court, she had failed to do so, and thus her claim was now time-barred.

36. All conditions precedent have been satisfied prior to the filing of this Complaint.

## V.
## CLAIMS AND CAUSES OF ACTION

### Count I
### Breach of Fiduciary Duty by all Defendants

37. Plaintiff herein realleges paragraphs 1 through 36 above as though fully set forth herein.

38. While an eligible employee at Albertson's, Ms. Churchill made regular contributions to the Intermountain Retail Employees' Pension Plan.

39. The Defendants were tasked with managing the money Ms. Churchill and her colleagues contributed, including but not limited to, investing it wisely and making distributions to beneficiaries upon qualified request.

40. The Defendants were likewise tasked to administer the benefits in accordance with the rights and benefits each employee was entitled to receive.

41. Therefore, the Defendants each owed a fiduciary duty to the beneficiaries of the plan, including Ms. Churchill.

42. The Defendants breached their fiduciary duty to Ms. Churchill when:
    a. The Board of Trustees denied early retirement benefits to her based on an incorrect application of its own rules;
    b. The Trust and Board of Trustees failed to administer the Trust in accord with the prevailing Plan documents regarding her right to early retirement benefits;

    c. The Trust and Board of Trustees denied the appeal of Ms. Churchill's early retirement benefits denial based on an incorrect application of its own rules;

    d. The Trust and Board of Trustees denied the appeal of Ms. Churchill's early retirement benefits denial based on an incorrect application of the Plan terms;

    e. The Trust Administrator, Zenith, failed to provide Ms. Churchill the requested Plan documents;

    f. The Trust Administrator, Zenith, represented the Plan appeals process included a second level appeal to the Board of Trustees;

    g. The Trust Administrator, Zenith, directed Ms. Churchill that to appeal the benefits denial by submitting a second level appeal to the Board of Trustees;

    h. The Trust Administrator, Zenith, accepted Ms. Churchill's second level appeal to the Board of Trustees;

    i. The Trust Administrator, Zenith, failed to advise Ms. Churchill that her second level appeal to the Board of Trustees, submitted in accord with Zenith's instructions, was procedurally deficient under the Plan;

    j. The Trust affirming Zenith's misrepresentation(s) to Ms. Churchill by advising that the second level appeal would be hearing on March 18, 2018, at the next meeting of the Board of Trustees; or

    k. The Trust offered Ms. Churchill a smaller benefit amount than that she is entitled to, though she was fully vested prior to changes to benefits being introduced into the plan.

43. The Defendants have caused damage to Ms. Churchill by the delay in receiving payment and by the anticipated reduced payment amount, in an amount to be proven at trial.

## Count II
## Fraud by Zenith

44. Plaintiff herein realleges paragraphs 1 through 43 above as though fully set forth herein.

45. Zenith represented to Plaintiff through phone conversations and other means that to contest the denial of early retirement benefits under the Plan that Ms. Churchill needed to file a second appeal with the Board of Trustees and the Trust.

46. The representation by Zenith that a second appeal could be filed was false.

47. The representation by Zenith that a second appeal should be filed with the Board of Trustees and the Trust was false.

48. After the statute of limitations for filing a Complaint in a court of competent jurisdiction had expired, Zenith's legal counsel then stated that the time to appeal was for a Complaint to be filed with the Court, not for an appeal to be made to Zenith.

49. The representation was material because Ms. Churchill based her decision to file a second appeal rather than a Complaint in Court due to the false representation of Zenith.

50. Zenith either knew that the representation was false, or they were at least ignorant of the truth at the time the representation was made.

51. Zenith made the representation to entice Plaintiff to submit an appeal to Zenith for review, rather than filing a Complaint in Court, so that Zenith could then argue the Complaint was time barred when Plaintiff discovered she had been hoodwinked by Zenith.

52. Plaintiff was ignorant to the falsity of the representation; she had no reason to doubt the veracity and truthfulness of Zenith's statements regarding her rights.

53. With all information available, Plaintiff relied on the truth of the representation made by Zenith to make sure all administrative remedies were exhausted before moving forward with

a Court proceeding.

54. Zenith was in the best position to correct the false representation and Plaintiff was right to rely on Zenith's representation.

55. Zenith's misrepresentation was the proximate cause of damages suffered by Plaintiff, including her inability to collect the pension benefit to which she is entitled.

## Count III
### Alternatively, Negligent Misrepresentation by Zenith

56. Plaintiff herein realleges paragraphs 1 through 55 above as though fully set forth herein.

57. As an alternative to fraud, Ms. Churchill alleges that Zenith was negligent in making the representations it made with regard to the appeal rights vesting in Ms. Churchill under the circumstances of the benefits claim denial by the Board of Trustees and the Trust.

58. Zenith was the Plan administrator and as such, it had a duty to the Plan beneficiaries, including Ms. Churchill, to provide true and accurate information regarding the administration of the Plan, including the appeal process defined under the Plan and applicable to Ms. Churchill's application for benefits.

59. Zenith represented to Plaintiff through phone conversations and other means that to contest the denial of early retirement benefits under the Plan that Ms. Churchill needed to file a second appeal with the Board of Trustees and the Trust.

60. The representations by Zenith were false; Zenith breached its duty to the Plan beneficiary, Ms. Churchill.

61. The false representations by Zenith were relied upon by Ms. Churchill.

62. The false representations by Zenith caused Ms. Churchill to sustain damages and an economic loss.

63. Zenith's misrepresentation was the proximate cause of damages suffered by Plaintiff,

including her inability to collect the pension benefit to which she is entitled.

## Count IV
## Fraud by Non-disclosure by Zenith

64. Plaintiff herein realleges paragraphs 1 through 58 above as though fully set forth herein.

65. Zenith was the Plan administrator and as such, it had a duty to the Plan beneficiaries, including Ms. Churchill, to provide true and accurate information regarding the administration of the Plan, including the appeal process defined under the Plan and applicable to Ms. Churchill's application for benefits, and/or to provide the entire Plan documentation upon request.

66. Zenith represented to Plaintiff through phone conversations and other means that to contest the denial of early retirement benefits under the Plan that Ms. Churchill needed to file a second appeal with the Board of Trustees and the Trust.

67. On July 22, 2020, Ms. Churchill made a request of Zenith to provide the entire Plan documentation so as to allow her to ascertain her rights under the Plan, as opposed to the Plan Summary document provided previously by Zenith.

68. On January 12, 2018, Ms. Churchill, in reliance upon the instructions by Zenith, submitted a second appeal to the Trust and the Board of Trustees.

69. With the knowledge that the second appeal was not procedurally correct, that in fact Ms. Churchill was required to file a Complaint in a court of competent jurisdiction under the Plan documents prior to January 18, 2018, Zenith sat silent and failed to disclose material information to Ms. Churchill about her appeal rights under the Plan.

70. The false representations by Zenith were relied upon by Ms. Churchill to her detriment.

71. Zenith did not disclose the known procedural deficiency to Ms. Churchill upon receipt of the known procedurally deficient second appeal, thereby hiding information Ms. Churchill

would have used to immediately file a Complaint with a court of competent jurisdiction in accord with the undisclosed procedural requirements.

72. Zenith failed to provide upon a valid request the entire Plan documents to Ms. Churchill; rather, they kept hidden material documentation that would have revealed the correct appeal procedure that was misrepresented by Zenith.

73. The representations by Zenith were false; Zenith breached its duty to the Plan beneficiary, Ms. Churchill by refusing to provide the Plan documents that contained the information necessary for Ms. Churchill to discovery the falsity of Zenith's false representations.

74. The false representations by Zenith caused Ms. Churchill to sustain damages and an economic loss.

75. Zenith's misrepresentation was the proximate cause of damages suffered by Plaintiff, including her inability to collect the pension benefit to which she is entitled.

### Count V
### Fraud by Trust and Board of Trustees

76. Plaintiff herein realleges paragraphs 1 through 75 above as though fully set forth herein.

77. After Zenith represented to Plaintiff that to contest the denial of early retirement benefits decision by the Board of Trustees under the Plan that Ms. Churchill needed to file a second appeal with the Board of Trustees and the Trust, Ms. Churchill did as directed by the Plain Administrator – she filed a second appeal.

78. The appeal was accepted by the Trust and the Board of Trustees.

79. The Trust and Board of Trustees affirmatively represented to Ms. Churchill that her second appeal would be heard at the March 15, 2021 Board of Trustees' meeting.

80. The representation by the Trust and Board of Trustees that a second appeal could be filed was false.

81. The representation by the Trust and Board of Trustees that the second appeal filed with the Board of Trustees and the Trust would be heard on March 15, 2021, was false.

82. After the statute of limitations for filing a Complaint in a court of competent jurisdiction had expired, the Trust then stated that the second appeal was untimely and procedurally deficient; the proper appeal rights under the Plan was for a Complaint to be filed with the Court, not for an appeal to be made to the Board of Trustees.

83. The false representation was material because Ms. Churchill based her decision to file a second appeal with the Trust and Board of Trustees, rather than a Complaint in Court, was due entirely to the false representation of the Trust and Board of Trustees.

84. The Trust and Board of Trustees either knew, or should have known, that the representation was false.

85. Alternatively, the Trust knew, or should have known, that Ms. Churchill was ignorant of the false statement at the time the representation was made because the administrator, Zenith, had not given Ms. Churchill the plan documents as she had requested.

86. The Trust and Board of Trustees made the representation to entice Plaintiff to submit an appeal to them for review, rather than revealing the truth that filing a Complaint in Court was the proper next step.

87. This was done by the Trust and Board of Trustees so that they could then later argue the Complaint was time barred after Plaintiff discovered she had been hoodwinked by the Trust and Board of Trustees.

88. Plaintiff was ignorant to the falsity of the representations; she had no reason to doubt the veracity and truthfulness of the Trust's and the Board of Trustee's statements regarding her rights and that the second appeal would be heard on March 15, 2021.

89. With all information available, Plaintiff relied on the truth of the representation made by the Trust and the Board of Trustees to conclude that all administrative remedies were not yet exhausted before moving forward with a Court proceeding.

90. The Trust was in the best position to correct the false representation and Plaintiff was right to rely on the Trust's representation.

91. The Trust's and Board of Trustees' misrepresentation was the proximate cause of damages suffered by Plaintiff, including her inability to collect the pension benefit to which she is entitled.

## Count VI
## Negligence by the Board of Trustees

92. Plaintiff herein realleges paragraphs 1 through 91 above as though fully set forth herein.

93. The Board of Trustees, as an agent of the Trust, owed a duty to Ms. Churchill, as a beneficiary of the Trust, to make decisions based on the plan documents.

94. Accordingly, the Board of Trustees had a duty to distribute retirement benefits according to the applicable plan rules and the plan documents in place at the time of her last contribution.

95. The Board of Trustees breached its duty to Ms. Churchill by denying her early retirement benefits, in contravention of the rules in place at the time her pension vested, and instead relying improperly on a newer set of rules that did not apply to Ms. Churchill.

96. The Board of Trustees caused damage to Ms. Churchill by the delay in receiving payment and by the anticipated reduced payment amount, in an amount to be proven at trial.

## VII.
## Exemplary Damages – Count 1

97. Plaintiff herein realleges paragraphs 1 through 96 above as though fully set forth herein.

98. Defendants, individually, in concert collectively, or in combination, have acted with actual

malice and/or actual fraud in breaching their duties to Ms. Churchill, entitling her to punitive damages under M.C.A. § 27-1-220.

## Prayer for Relief

WHEREFORE, Plaintiff Kimberlee Churchill prays for relief as follows:

A. An award of economic damages against each Defendant for the delay in receiving payment and for the anticipated reduced payment amount, in an amount to be proven at trial;

B. An award of economic damages against each Defendant for the anticipated reduced payment amount, in an amount to be proven at trial;

C. An award of special damages against each Defendant for the delay in receiving payment and for the anticipated reduced payment amount, in an amount to be proven at trial;

D. An award of special damages against each Defendant for the anticipated reduced payment amount, in an amount to be proven at trial;

E. An award of pre-judgment interest;

F. An award of post-judgment interest;

G. An award of costs, expenses and attorney's fees incurred by or on behalf of Plaintiff;

H. An award of punitive damages against all Defendants in favor of Plaintiff; and

I. For any other relief the Court deems just under the circumstances.

DATED this 2nd day of April, 2021.

                                                   */s/ Lawrence E. Henke*
                                                  LAWRENCE E. HENKE
                                                  Attorney for the Plaintiff

## DEMAND FOR JURY TRIAL

Comes now the Plaintiff, by and through her counsel, and hereby demands a jury trial.

Dated this 2nd day of April, 2021.

/s/ *Lawrence E. Henke*
Lawrence E. Henke
Attorneys for the Plaintiff

## VERIFICATION

STATE OF MONTANA   )
                   : ss.
County of Silver Bow )

Kimberlee Churchill being first duly sworn upon oath, depose and state:

That he has read the foregoing Complaint and that the facts and matters contained therein are true, accurate, and complete to the best of her knowledge and belief.

_Kimberlee Churchill_

Subscribed and sworn to before me this 31st day of March, 2021.



Printed Name: Kimberly LaPalm
Notary Public for the State of MT
Residing at Butte
My Commission Expires: 06/30/2022

COMPLAINT AND DEMAND FOR JURY TRIAL – Page 16